**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | No. 17-cr-203 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| ) | |
| KEVIN BASS ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Kevin Bass's motion to suppress [23]. For the reasons set forth below, the Court declines Defendant's request to set this matter for a suppression hearing and denies Defendant's motion to suppress [23].

**I.    Background**

**A.    Request for Evidentiary Hearing**

The Seventh Circuit has described "the resolution of a motion to suppress" as a "fact-intensive inquiry" in which the district court must make "credibility determinations" based on "its opportunity at the suppression hearing to hear the testimony and observe the demeanor of the witnesses." *United States v. Kempf*, 400 F.3d 501, 503 (7th Cir. 2005); see also *United States v. Springs*, 17 F.3d 192, 194 (7th Cir. 1994) (explaining the deference given to the credibility determinations of the district judge who has "heard the conflicting testimony, observed the witnesses, and then reached a determination about whom to believe"). However, before a suppression hearing is warranted, a defendant has the burden of presenting "definite, specific, detailed, and nonconjectural facts" to establish that there actually are disputed issues of material fact sufficient to warrant an evidentiary hearing. *United States v. Rodriguez*, 69 F.3d 136, 141 (7th Cir. 1995). The defendant must make this *prima facie* showing of illegality without relying

on vague or conclusory allegations. See *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). As set forth below, after considering Defendant's motion to suppress, the Court concludes that Defendant has not met his burden.

### B.     Facts[1]

The indictment charges Defendant with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count I); one count of possessing heroin and cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count II); and one count of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count III). [See 1.] These charges arise from Defendant's arrest on the evening of October 12, 2016. Earlier on that same day, the Chicago Police Department received a report that approximately 20 shots had been fired in the vicinity of 53rd and May Street in Chicago, Illinois. [23 at 1]; [25, Ex. A at 3]. The Chicago Police Department later received a report that an individual was displaying a handgun at the same location. [23 at 2]; [25, Ex. A at 3]. In response to these reports, the police set up surveillance activity at that intersection lasting approximately 30 minutes. [25, Ex. A at 3, 7, 11.] This intersection is known for narcotics activity. [*Id.*] Officers Dowling, Velazquez, Miller, Elmer, and Evans were present in the area. [*Id.* at 9–13.]

During this surveillance, several of the officers observed Defendant participating in what they believed to be narcotics transactions. [*Id.*] Specifically, officers observed (1) Defendant and other subjects loitering on different porches on S. May Street; (2) unknown subjects approach the porches and, after brief conversations with the Defendant and others, enter the

---

[1] These background facts are taken from the Chicago Police Department Arrest Report, Chicago Police Department Original Case Incident Report, Gang Investigation Section Supplementary Report, and federal investigative reports referenced in Defendant's motion and attached to the government's response, as well as from Defendant's affidavit filed in support of his motion to suppress. See [23-1], [25, Ex. A].

residences; and (3) after a short time, all subjects emerging from the residences and parting ways. [See 25, Ex. A at 7–8.] Shortly afterwards, two of the officers, Detectives Dowling and Velazquez, approached Defendant sitting on the steps in front of 5314 S. May Street. [*Id.* at 7–10]; [23-1 (Bass Affidavit) ¶ 4]. Dowling told Defendant to stand up. [25, Ex. A at 3, 9]; [23-1 (Bass Affidavit) ¶ 6]. When Defendant complied with this directive, Dowling observed a handgun in Defendant's waistband. [25, Ex. A at 9.] Dowling then conducted a pat-down search of Defendant, revealing a Glock 17 nine-millimeter semi-automatic handgun. [*Id.* at 3.] Another officer on the scene, Officer Elmer, recovered the weapon. [*Id.*] Defendant was placed under arrest, and a custodial search uncovered crack cocaine and heroin in his possession. [*Id.*] Defendant was then interviewed by FBI agents, and during the course of the interview Defendant made several incriminating statements. [*Id.*]; [23-1 (Bass Affidavit) ¶ 7].

The motion to suppress avers that there is a factual inconsistency between the accounts of the arresting officers, Detectives Dowling and Velazquez, that necessitates an evidentiary hearing. According to Defendant, Dowling claims that he saw a "black object" protruding from Defendant's waistband, and then conducted the protective pat-down. [23 at 2.] Defendant argues this is different from Velazquez's account that he heard Dowling order Defendant to stand up and then heard that Dowling say that he had recovered a gun. [*Id.*]

**II.     Analysis**

Defendant argues that the Chicago Police Department officers' conduct constituted an unjustified *Terry* stop and frisk in violation of his Fourth Amendment rights because the officers lacked reasonable suspicion to stop him on the evening of October 12, 2016. Defendant seeks to suppress all of the evidence obtained as a result of this stop, including both the handgun and drug

3

evidence recovered from the searches of Defendant and the statements that Defendant subsequently made while in custody.

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. Under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), officers may stop and briefly detain a person for investigative purposes without violating the Constitution if they have reasonable suspicion supported by articulable facts that criminal activity may be afoot. See also *United States v. Sokolow*, 490 U.S. 1, 7 (1989). The reasonable suspicion standard is less demanding than probable cause. *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015); see also *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008) ("Reasonable suspicion is more than a hunch but less than probable cause and 'considerably less than preponderance of the evidence.'") (citation omitted). Whether or not reasonable suspicion of criminal activity exists to initiate a *Terry* stop is measured objectively based on the sum of all facts available at the time of a defendant's seizure, and reasonable suspicion "can arise from behavior that may in other circumstances be considered innocent; in other words, context matters." *Ruiz*, 785 F.3d at 1141 (internal quotation marks omitted). If reasonable suspicion does not exist, such that a defendant is detained in violation of his Fourth Amendment rights, the exclusionary rule will apply to "kick[] out the unlawfully obtained evidence" recovered as a result. *United States v. Amaya*, 227 F. Supp. 3d 930, 935 (N.D. Ill. 2016).

Defendant argues that Dowling's order that Defendant "stand up" when Dowling and Velazquez approached Defendant while he was sitting on the front steps at 5314 S. May Street amounted to a seizure. [23 at 3–4.] The Government does not appear to dispute this, and the Court agrees that this was a seizure under the Fourth Amendment because under these circumstances, "[a] reasonable person in [Defendant's] position * * * would not believe that he

4

was free to leave." *Gentry v. Sevier*, 597 F.3d 838, 844 (7th Cir. 2010); see also *United States v. Packer*, 15 F.3d 654, 657 (7th Cir. 1994) (police conduct constitutes a seizure when it "would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business").

Defendant further argues that this seizure was not supported by reasonable suspicion.[2] [23 at 5.] Defendant contends that he was merely "a random citizen sitting on the front steps of a house," [23 at 5], and the police had no reason to approach him and initiate a search. The Government counters that the officers had specific and articulable reasons for approaching Defendant to conduct a field interview. [25 at 9–10.]

The Court concludes that the officers did have reasonable suspicion to detain Defendant and thus executed a constitutional *Terry* stop. The Government relies on several facts set out in the law enforcement reports filed after Defendant's arrest that amount to "more than a hunch" that Defendant himself was engaged in criminal activity. *Jewett*, 521 F.3d at 823. Specifically, (1) the officers were present in the area responding to reports that an individual was displaying a handgun in the vicinity and that shots had been fired; (2) the area was known for drug activity; and (3) the officers observed Defendant's personal involvement in apparent narcotics transactions on the porches of several buildings on S. May Street during their surveillance of the intersection. [See 25 at 2, 8–9.] Based on all of the circumstances known to the officers at the time they approached Defendant—and especially their observations of Defendant himself—the officers could reasonably suspect that Defendant was engaged in criminal activity. See *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (while not enough standing alone to support reasonable

---

[2] Defendant also appears to state at points that the officers lacked probable cause to conduct a search. See [23 at 2], [27 at 1]. Defendant's arguments only address whether the circumstances of his stop meet the lower threshold of reasonable suspicion, though, and as discussed only reasonable suspicion is required to initiate a *Terry* stop. See *Sokolow*, 490 U.S. at 7.

suspicion, the fact that a stop occurs in a "high crime area" is a relevant consideration in a *Terry* analysis); *Ruiz*, 785 F.3d at 1141–42 (affirming district court's finding of reasonable suspicion where defendant's actions were consistent with drug trafficking); *United States v. Rivera*, 101 F. App'x 166, 170 (7th Cir. 2004) (finding that reasonable suspicion of a drug transaction existed based on law enforcement agent's observations of defendant's behavior and the agent's deductions based on his knowledge of what drug transactions look like); *United States v. Ogburn*, 2008 WL 763369, at *3 (S.D. Ind. Mar. 20, 2008) (finding that reasonable suspicion existed where defendant was present inside house that contained narcotics and defendant had been observed participating in "what appeared to be a hand-to-hand drug transaction").

Defendant's reliance on *United States v. Paniagua-Garcia*, 813 F.3d 1013 (7th Cir. 2016), in support of his motion to suppress is misplaced. In *Paniagua-Garcia*, an Indiana police officer stopped the defendant because the defendant appeared to be texting while driving in violation of state law. *Id.* at 1014. After pulling the defendant over, the officer received permission to search the car and discovered heroin concealed in the trunk. *Id.* Although the district court found that reasonable suspicion existed to justify the stop, the Seventh Circuit reversed because the officer had no basis to suspect that the defendant had been texting while driving as opposed to using his phone in a lawful manner. *Id.* at 1014–15.

In this case, though, the police officers had specific reasons to suspect Defendant of engaging in criminal activity that justified the stop. Both Defendant's actions and the context in which those actions took place support that conclusion. Defendant contests that the reports of an individual displaying a handgun in the area could form the basis of a reasonable suspicion to stop him, as the police did not suspect Defendant of being this individual. See [23 at 2]; [25, Ex. A at 13]. However, even disregarding that fact altogether, there still were several other factors to

support the officers' reasonable suspicion of Defendant's involvement in criminal activity. There had been previous reports of gunshots in the area, the area was known for drug activity, and the officers personally observed the Defendant engaged in apparent drug transactions. While any of these factors could be viewed innocently in isolation, "when all of [Defendant's] actions are viewed in concert and through the lens of experienced law enforcement officers, the innocent explanations begin to look less likely." *Ruiz*, 785 F.3d at 1142. The officers articulated specific facts in their investigative reports that amounted to an objectively reasonable suspicion that Defendant had committed a crime, such that they were justified in initiating an investigatory stop.

Additionally, the officers had reasonable suspicion to frisk Defendant during the investigative stop. "[T]o proceed from a stop to a frisk, the officer 'must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.'" *Huff v. Reichert*, 744 F.3d 999, 1009 (7th Cir. 2014) (quoting *Arizona v. Johnson*, 555 U.S. 323, 327 (2009)). Dowling and Velazquez had this reasonable suspicion because Dowling saw what appeared to be a firearm in Defendant's waistband when he stood up. [25, Ex. A at 3, 9.] Furthermore, the officers had reasonable suspicion that Defendant was participating in drug transactions, and thus also had reason to believe that Defendant was armed because guns are often used in the drug trade. See *United States v. Thompson*, 842 F.3d 1002, 1007 (7th Cir. 2016). Under those circumstances, it was proper for Dowling to conduct a protective pat-down of Defendant to ensure his safety and the safety of others in the immediate vicinity. See *United States v. Patton*, 705 F.3d 734, 737 (7th Cir. 2013) (citing *Terry*, 392 U.S. at 27). In short, both the stop and the frisk of Defendant were supported by reasonable suspicion, Defendant's Fourth Amendment rights were not violated by the stop, and the gun recovered from Defendant need not be

excluded. Defendant makes no further arguments that his constitutional rights were violated by the subsequent custodial search and custodial interrogation, and therefore the narcotics evidence and Defendant's custodial statements need not be excluded from evidence either.

Defendant's motion does not raise a material dispute concerning the facts supporting reasonable suspicion for his detention. It is unclear exactly how Defendant is arguing that the accounts of Dowling and Velazquez differ; according to Defendant, both officers reported that they approached Defendant, Dowling ordered Defendant to stand up, and then Dowling recovered a gun after Defendant complied with the order. Even if the Court agreed that there was a discrepancy between these accounts, Defendant has not established that such a discrepancy creates a disputed issue of material fact to warrant an evidentiary hearing. Defendant's affidavit does not dispute the key facts in those reports that support reasonable suspicion, but instead disputes that these facts add up to a reasonable suspicion that justified Defendant's seizure. See [23], [23-1.] As discussed, the officers did have reasonable suspicion to stop and frisk Defendant. Accordingly, Defendant has not carried his burden to demonstrate the necessity for an evidentiary hearing. See *Rodriguez*, 69 F.3d at 141 ("To warrant a hearing, the defendant's submission must demonstrate that there is a disputed material issue of fact.") (internal quotations and citations omitted); see also *United States v. Toro*, 359 F.3d 879, 885 (7th Cir. 2004).

In short, because the record makes clear that the officers had reasonable suspicion to stop Defendant on October 12, 2016, Defendant's motion to suppress the physical evidence and his statements made while in custody will be denied without an evidentiary hearing.

**III. Conclusion**

For these reasons, the Court denies Defendant Kevin Bass's motion to suppress [23].

Dated:  November 13, 2017

_____
Robert M. Dow, Jr.
United States District Judge